UNITED STATES of America, Appellee,

v.

Lee VUE, Appellant.

UNITED STATES of America, Appellee,

v.

Neng VUE, Appellant.

Nos. 94–2030, 94–2032.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1994.

Decided Oct. 18, 1994.

Tom Wilka, Sioux Falls, SD, for Lee Vue.

James Arthur Eirinberg, Sioux Falls, SD, for Neng Vue.

Thomas J. Wright, Asst. U.S. Atty., Sioux Falls, SD, for U.S.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Neng Vue and Lee Vue, who are brothers of Hmong ethnic descent, were convicted in late 1992 of three drug charges and one firearms charge. Those convictions were reversed on appeal because of the improper admission of testimony suggesting that persons of the Vues' ethnic background were likely to be involved in opium smuggling.

*See United States v. Vue,* 13 F.3d 1206, 1211, 1213 (8th Cir.1994).

On remand, each defendant pleaded guilty to one drug charge; the remaining charges were dismissed by agreement of the parties. The court sentenced Neng Vue to 63 months of imprisonment, Lee Vue to 41 months of imprisonment. The Vues appeal their sentences. Each argues that he was entitled to an additional one-level reduction in his base offense level under the federal sentencing guidelines for acceptance of responsibility, that the court improperly assessed a two-level enhancement in each one's base offense level for possession of a firearm during the offense, and that the drug equivalency tables used to calculate the amount of opium chargeable for sentencing purposes are irrational, arbitrary, and capricious. We affirm the sentencing court[1] in all respects.

## I.

■ Each defendant received a two-level reduction in base offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). Each contends that he was entitled to an additional one-level reduction because of his timely notice to the government that he would plead guilty, "thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently," *see* U.S.S.G. § 3E1.1(b)(2).

Even though each defendant pleaded guilty within approximately three months of the reversal of his convictions on initial appeal, we do not agree that the government was saved much effort by those pleas, since the bulk of preparation by the government was for the initial trial and could relatively easily have been applied to the second trial as well. *See, e.g., United States v. McQuay,* 7 F.3d 800, 803 (8th Cir.1993). There is no clear error, *see, e.g., id.* at 801, in the court's refusal to grant an additional one-level reduction in base offense level.

## II.

■ Under the federal sentencing guidelines, the court applied a two-level enhancement in each defendant's base offense level for possession of a firearm during the offense. *See* U.S.S.G. § 2D1.1(b)(1). Each defendant challenges that enhancement, noting that the probation office did not recommend the application of that enhancement and arguing that the placement of a gun in the bottom of a duffel bag in their car does not provide a close enough connection to the drugs found in the apartment building where the Vues were arrested to warrant the enhancement.

As the government points out, however, the commentary to the relevant guideline, reflecting "the increased danger of violence when drug traffickers possess weapons," directs that the "adjustment should be applied ... unless it is clearly improbable that the weapon was connected with the offense." *See* U.S.S.G. § 2D1.1, application note 3. At the original trial, the Vues were convicted of using or carrying a firearm "during and in relation to" a federal drug trafficking crime. *See United States v. Vue,* 13 F.3d 1206, 1207, 1210 (8th Cir.1994); *see also* 18 U.S.C. § 924(c)(1). It is undisputed that that firearm was the gun in the duffel bag. The court for the appeal from that original trial found that "the evidence [on all counts] was sufficient to sustain the Vues' convictions." *United States v. Vue,* 13 F.3d at 1213. That finding, which was not affected by the reversal of the Vues' convictions on other grounds, *id.,* establishes that it was not clearly erroneous, *see, e.g., United States v. Pou,* 953 F.2d 363, 371 (8th Cir.1992), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 1982, 1983, 118 L.Ed.2d 580 (1992), for the sentencing court to apply the two-level enhancement in question.

## III.

Under the federal sentencing guidelines, the quantity of drugs involved determines the base offense level in most cases. *See* U.S.S.G. § 2D1.1(a)(3), § 2D1.1(c). Where the drugs in question are not contained in the quantity specifications listed in the guidelines, the court must determine the quantity

---

1. The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

to be considered by consulting drug equivalency tables contained in the commentary to the guidelines. *See* U.S.S.G. § 2D1.1, application note 10. Those tables direct that one gram of opium, the drug involved in this case, is considered the equivalent of 50 milligrams of heroin or 50 grams of marijuana.

The Vues argue that that equivalency determination is irrational, arbitrary, and capricious, and therefore a violation of their due process rights. They further assert that even if that equivalency determination might be rational in most cases, where it can be assumed that the opium would have been further processed into heroin, it is irrational (and therefore unconstitutional) in their case, because people of Hmong ethnic descent have traditionally used opium only by smoking it in its raw form for its medicinal qualities. Essentially, the Vues argue that the particular type of opium use customary for people of Hmong ethnic descent is a circumstance not taken into account when the sentencing guidelines (and the drug equivalency tables) were established.

▪ The Vues apparently do not challenge the rationality of the determination that one gram of opium is equivalent to 50 milligrams of heroin when it is assumed that the opium will be processed into heroin; they concede that that particular determination has a pharmacological basis. What they challenge is the determination that one gram of opium (assuming that the opium will be processed into heroin), or 50 milligrams of heroin, is equivalent to 50 grams of marijuana. That particular equivalency determination has no pharmacological basis, the Vues assert, but is drawn instead from the statutes establishing mandatory minimum sentences for offenses involving various large amounts of drugs of different types. *See* 21 U.S.C. § 841(b)(1)(A)(i), § 841(b)(1)(A)(vii), and 21 U.S.C. § 841(b)(1)(B)(i), § 841(b)(1)(B)(vii).

The courts have repeatedly held, however, that the mandatory minimum sentencing statutes have a rational basis and therefore do not violate due process. *See, e.g., United States v. Linn,* 880 F.2d 209, 217 (9th Cir. 1989), and *United States v. Richards,* 737 F.2d 1307, 1310 (4th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774

(1985). We hold that, for the same reasons, the equivalency tables are not irrational. *See, e.g., United States v. August,* 984 F.2d 705, 714 (6th Cir.1992) *(per curiam ), cert. denied,* —— U.S. ——, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993); *see also United States v. August,* 778 F.Supp. 931, 933–35 (E.D.Mich. 1991), *aff'd,* 984 F.2d 705 (6th Cir.1992) *(per curiam ), cert. denied,* —— U.S. ——, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993).

▪ The more interesting argument is that the equivalency tables (and the sentencing statutes) fail to take into account the possibility that opium will not be processed into heroin but instead may be smoked in its raw form, specifically, by custom among people of Hmong ethnic descent, for its medicinal properties. The Vues contend that that failure in the equivalency tables (and the sentencing statutes) amounts to discrimination against them as an ethnic minority in violation of their equal protection rights.

Even if "a [facially] neutral law has a disproportionately adverse effect upon a racial minority, [however], it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979). The Vues have offered no evidence of such a purpose, nor, without evidence of such a history either at the time of enactment or subsequently, may they presume such a purpose from the fact that the equivalency tables (and the sentencing statutes) have remained in effect despite equal protection challenges based on the customary uses of opium by people of Hmong ethnic descent. *See, e.g., United States v. Johnson,* 28 F.3d 1487, 1493–94 (8th Cir.1994), and *United States v. Maxwell,* 25 F.3d 1389, 1396–97 (8th Cir. 1994).

▪ The Vues acknowledge, moreover, that the atypical method of opium use among people of Hmong ethnic descent does not provide a rationale for departure from the guidelines. *See, e.g., United States v. Maxwell,* 25 F.3d at 1400–01, and *United States v. McMurray,* 34 F.3d 1405, 1413–14 (8th Cir. 1994); *see also* U.S.S.G. § 5K2.0. We there-

fore find no basis for accepting the arguments specific to their Hmong ethnic descent.

## IV.

For the reasons stated, we affirm the judgments of the sentencing court.